UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

Case No. EDCV 11-0935 DOC (DTBx)             Date: March 20, 2012

Title: GUSTAVO VALDEZ -V- JPMORGAN CHASE BANK, N.A.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFFS: ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT            NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

       Before the Court is Defendant JPMorgan Chase Bank, N.A.'s Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Mot.") (Dkt. 13). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local Rule 7-15. The Court has considered the moving, opposing, and replying papers, and hereby GRANTS in part and DENIES in part Defendant's Motion to Dismiss.

### I.     BACKGROUND

       The facts alleged by Gustavo Valdez ("Plaintiff") are as follows:

       In January 2006, Plaintiff obtained a mortgage loan from Washington Mutual Bank, FA ("WaMu") in the amount of $228,750 secured by a Deed of Trust encumbering Plaintiff's home in San Bernardino, CA. First Amended Complaint ("FAC") (Dkt. 11) ¶¶ 12-13. At that same time, Plaintiff obtained a Home Equity Line of Credit from WaMu in the amount of $45,750 secured by a second

Deed of Trust encumbering Plaintiff's home. Request for Judicial Notice ("RJN") (Dkt. 14) Ex. 2.[1] Much of Plaintiff's FAC revolves around actions allegedly taken by WaMu during the origination of these loans – notably, allegations that WaMu did not provide proper disclosures, engaged in predatory lending, falsified Plaintiff's income and assets, and did not provide forms in Plaintiff's native Spanish language. *See*, *e.g.*, FAC ¶¶ 15-19, 34-60. As will be discussed later, Plaintiff cannot maintain an action against JPMorgan Chase Bank, N.A. ("Defendant") for claims arising out of WaMu's lending practices, and therefore a detailed discussion of the facts supporting these claims is unwarranted. The Court instead discusses only those facts relevant to actionable claims against Defendant.

On September 25, 2008, WaMu entered receivership under the direction of the FDIC in the largest bank failure in United States history. On that same day, Defendant entered into a Purchase and Assumption Agreement (the "Purchase Agreement") with the FDIC whereby certain assets and liabilities were transferred from WaMu to Defendant. Per Section 2.5 of the Purchase Agreement, Defendant specifically disclaimed the assumption of any borrower claims against WaMu relating to WaMu's lending practices. RJN Ex. 7.

In late 2008, Plaintiff fell behind on his mortgage payments and a Notice of Default was recorded against Plaintiff on February 4, 2009. RJN Ex. 3. Plaintiff claims that prior to the recordation of this Notice of Default, Defendant made no effort to contact him regarding foreclosure alternatives. FAC ¶ 23. After receiving the Notice of Default, Plaintiff applied for a loan modification with Defendant under the Making Home Affordable Modification Program ("HAMP") in August 2009. FAC ¶¶ 23, 85.

In August 2009, Defendant sent Plaintiff a document titled "SPECIAL FORBEARANCE AGREEMENT" ("SFA"). FAC ¶ 86. Plaintiff alleges that under the terms of the SFA, "if Plaintiff agreed to a temporary payment plan and made all payments on the terms set forth by Defendants, Defendants would reevaluate Plaintiff's Loan in order to offer Plaintiff a permanent modification." FAC ¶ 87. Plaintiff signed and returned the SFA to Defendant and made all payments required under

---

[1] Defendant has asked the Court to take judicial notice of seven documents: a Deed of Trust recorded on February 1, 2006, securing $228,750 against Plaintiff's home (Exhibit 1); a Deed of Trust recorded that same day securing $45,750 against Plaintiff's home (Exhibit 2); a Notice of Default recorded on February 4, 2009 (Exhibit 3); a Notice of Trustee's Sale recorded on May 12, 2009 (Exhibit 4); a Notice of Trustee's Sale recorded on June 25, 2010 (Exhibit 5); a Notice of Trustee's Sale recorded on January 31, 2011 (Exhibit 6); and the Purchase and Assumption Agreement between Chase and the Federal Deposit Insurance Corporation ("FDIC") dated September 25, 2008, relating to Chase's purchase of WaMu out of receivership from the FDIC (Exhibit 7). As these documents are matters of public record and Plaintiff does not object, the Court GRANTS Defendant's Request for Judicial Notice. The Court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

the SFA. FAC ¶ 88.

In February 2010, Plaintiff avers that he received a letter from Defendant (the "February 2010 Letter"). FAC ¶ 89. In Plaintiff's words, the letter stated that "his Loan was scheduled to be adjusted beginning March 1, 2010 with a reduced payment of $1,036.04 and an interest rate of 3.019%."[2] *Id.* Plaintiff claims that because he had made all his payments under the SFA, thereby obligating Defendant to reevaluate his loan, the February 2010 Letter led him to believe that Defendant had reevaluated his loan and was offering him a permanent loan modification. FAC ¶ 90.

Plaintiff made timely payments in the amount specified by the February 2010 Letter for the periods of March 2010 through July 2010. FAC ¶ 91. However, on June 28, 2010, Defendant returned Plaintiff's July 2010 payment, stating that Defendant was "no longer going to accept Plaintiff's payment as it did not fully reinstate Plaintiff's loan." FAC ¶ 92. Plaintiff claims that after this payment was returned, Defendant refused to accept any further payments made under the terms of the February 2010 Letter. FAC ¶¶ 97, 117.

On March 15, 2011, Plaintiff sent Defendant a qualified written request ("QWR") in accordance with the provisions of the Real Estate Settlement Procedures Act ("RESPA"). FAC ¶ 105. Defendant allegedly gave an incomplete response to Plaintiff's QWR on April 7, 2011, failing "to provide Plaintiff of proper validation of documentation, Plaintiff's loan application and all [Truth In Lending Act] disclosures." *Id.*

Several Notices of Trustee's Sale have been recorded against Plaintiff's home; the most recent one provided to the Court was recorded on January 31, 2011, with a sale scheduled for February 22, 2011. RJN Ex. 6. The pleadings do not reflect that a sale of Plaintiff's home has yet occurred.

Based on this conduct, Plaintiff brings twelve causes of action against Defendant: (1) fraud in the origination of loan; (2) violation of Civil Code Section 2932.5; (3) violation of Civil Code Section 2923.5; (4) breach of contract; (5) violation of RESPA; (6) breach of the implied covenant of good faith and fair dealing; (7) violation of the Truth In Lending Act ("TILA"); (8) rescission; (9) predatory lending in violation of Business & Professions Code Section 17200; (10) unfair and deceptive business act practices in violation of Business & Professions Code Section 17200; (11) violation of Civil Code Section 1632(b); and (12) preliminary and permanent injunction.

II.     **LEGAL STANDARD**

---

[2]Plaintiff has attached neither the SFA nor the February 2010 Letter to his complaint, nor does he purport to quote those documents verbatim. The Court thus notes that the factual allegations concerning the rights and obligations created by the SFA and the February 2010 Letter are Plaintiff's interpretation of those rights and obligations.

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 1949. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not establish a plausible claim for relief. *Id.* at 1950. Determining whether a complaint states a plausible claim for relief will be a context-specific task requiring the court to draw on its judicial experience and common sense. *Id.*

In general, a court cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss to one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Additionally, a court may take judicial notice of "'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original). Dismissal without leave to amend is appropriate only when the Court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

#### A. DEFENDANT DID NOT ASSUME LIABILITY FOR BORROWER CLAIMS AGAINST WAMU RELATING TO WAMU'S LENDING PRACTICES

Plaintiff's First, Seventh, Eighth, Ninth, and Eleventh causes of action are based entirely on actions or omissions by WaMu relating to WaMu's origination of Plaintiff's loan. Plaintiff's Tenth cause of action is based in part on WaMu's conduct during Plaintiff's loan application and approval process.

Plaintiff cannot bring actions against Defendant for the alleged misconduct of WaMu during WaMu's origination of Plaintiff's loans. The Purchase Agreement between the FDIC and Defendant specifically disclaimed the assumption of any liability by Defendant related to borrower claims against WaMu for WaMu's lending practices. RJN Ex. 7. Other federal courts have examined this exact clause in the Purchase Agreement and reached the same conclusion. *See Ansanelli v. JPMorgan Defendant Bank, N.A.*, No. C 10-03892 WHA, 2011 U.S. Dist. LEXIS 32350, at * 6 (N.D. Cal. Mar. 28, 2011) ("[Defendant] is not responsible for any liability of WaMu related to loans made by WaMu prior to September 25, 2008 . . . ."); *Javaheri v. JPMorgan Defendant Bank, N.A.*, CV10-08185 ODW (FFMx), 2011 U.S. Dist. LEXIS 4249, at * 8-9 (C.D. Cal. Jan. 11, 2011) ("[B]ecause JPMorgan expressly disclaimed assumption of liability arising from borrower claims against WaMu, those actions which predate the P & A Agreement cannot be brought against JPMorgan."). Rather, the FDIC "was and remains the appropriate party in interest." *Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009). Therefore, any claims Plaintiff may have relating to the origination of his loans are properly brought against the FDIC, not Defendant. Accordingly, Plaintiff's First, Seventh, Eighth, Ninth, and Eleventh causes of action, and the portions of his Tenth cause of action relating to WaMu's lending practices, are hereby DISMISSED WITH PREJUDICE as against Defendant.

### B. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2932.5

Plaintiff argues that his loans were never duly assigned from WaMu to Defendant in violation of Section 2932.5, and therefore Defendant may not exercise the power of sale contained in the Deeds of Trust.[3] FAC ¶ 66. Section 2932.5 states that when the power of sale is given to a mortgagee or other encumbrancer "in an instrument intended to secure the payment of money," that power of sale is part of the security and "vests in any person who by assignment becomes entitled to payment of the money secured by the instrument." Cal. Civ. Code § 2932.5. That power of sale "may be exercised by the assignee if the assignment is duly acknowledged and recorded." *Id.*

Defendant argues that because Plaintiff's home is being foreclosed upon pursuant to the power of sale in a deed of trust, his reliance on Section 2932.5 is inapposite because Section 2932.5 only applies to mortgages. The Court agrees. California courts have consistently held that Section 2932.5 does not apply to deeds of trust. *See Stockwell v. Barnum*, 7 Cal. App. 413, 417 (1908) ("The transferee of a negotiable promissory note, payment of which is secured by a deed of trust whereby the title to the property and power of sale in case of default is vested in a third party as trustee, is not an incumbrancer to whom power of sale is given, within the meaning of [Section 2923.5]."); *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 123 (2011) ("The holding of *Stockwell* has never been reversed or modified in any reported California decision in the more than 100 years since the case was decided. The rule that section 2932.5 does not apply to deeds of trust is part of the law of real property in California."). Plaintiff's home is being foreclosed upon by California Reconveyance Company

---

[3]Unless otherwise noted, all statutory references in this Order are to the California Civil Code.

acting as the trustee under Plaintiff's first Deed of Trust, not under the power of sale contained in a mortgage. RJN Ex. 1; RJN Ex. 3. As such, Section 2932.5 does not apply in this case.

Plaintiff relies on *In re Salazar*, 448 B.R. 814 (Bankr. S.D. Cal. 2011), for the proposition that Section 2932.5 *does* apply to deeds of trust. *See id.* at 820-21 (finding the historical distinction between mortgages and deeds of trust obsolete). While this Court is persuaded by the reasoning in *Salazar*, we note that federal courts are bound to interpret a state's laws according to the decisions of that state's courts. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). The only cases this Court has found which argue that Section 2932.5 applies to deeds of trust are federal cases; California courts have been uniform in applying Section 2932.5 only to mortgages.[4] Accordingly, Plaintiff's 2932.5 claim is DISMISSED WITH PREJUDICE.

### C. VIOLATION OF CALIFORNIA CIVIL CODE SECTION 2923.5

Plaintiff claims that Defendant never contacted him in order to discuss foreclosure alternatives prior to the recordation of the Notice of Default, thereby violating Section 2923.5. FAC ¶ 76. Section 2923.5 requires that, at least 30 days prior to filing a notice of default, lenders must first contact borrowers and explore foreclosure alternatives that would keep borrowers in their homes. *See* Cal. Civ. Code § 2923.5(a). To demonstrate compliance with this Section, lenders filing a notice of default must attach a declaration stating that the lender either contacted the borrower or that the lender tried with due diligence to contact the borrower. *See* Cal. Civ. Code § 2923.5(b). Section 2923.5 extensively details the definition of "due diligence" in this context: lenders must first send borrowers a letter, then try calling at least three times on different days at different hours, and then send a certified letter with a return receipt; lenders must also have a toll-free number providing access to a live representative as well as a "prominent" link on their webpage linking borrowers to pertinent information. *See* Cal. Civ. Code § 2923.5(g).

Recently, in *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), the California Court of Appeal closely examined Section 2923.5 in a similar context. In *Mabry*, the plaintiff borrowers sought to postpone the foreclosure proceedings against their home because they alleged that the defendant lender had not made the contact required by Section 2923.5. *Id.* at 216-17. The defendant lender noted that, as required, a declaration asserting compliance with Section 2923.5 had been attached to the notice of default; defendant lender therefore claimed that no violation had occurred. *Id.* at 216. The defendant lender also asserted that it had made contact with plaintiff borrowers numerous times,

---

[4] Plaintiff also argues that *Bank of It. Nat'l Trust & Sav. Ass'n v. Bentley*, 217 Cal. 644 (1933), supports his position that Section 2932.5 applies to deeds of trust. *Id.* at 658. This exact argument has been rejected by California courts. *See Calvo*, 199 Cal. App. 4th at 124 ("Nothing in the holding or analysis of the *Bank of Italy* opinion supports plaintiff's position here that we should find section 2932.5 applies to a deed of trust.").

thereby substantively satisfying the requirements of Section 2923.5 as well. *Id.* Plaintiff borrowers insisted that no contact had been made and no due diligence performed; they essentially claimed that the declaration attached to the notice of default asserting compliance with Section 2923.5 was a lie. *Id.*

The *Mabry* court made several important findings regarding Section 2923.5. Most relevant to the present case, it determined that a declaration asserting compliance with Section 2923.5 that tracked the statutory language was acceptable, even though it was obviously form language. *Id.* at 216, 235. The court also held that the declaration was acceptable even if it was not signed under penalty of perjury. *Id.* at 233. Notably though, the *Mabry* court did not hold that the declaration at issue was conclusive evidence that the requirements of Section 2923.5 had been met. Instead, because of the factual dispute as to whether the requirements of Section 2923.5 were met, the *Mabry* court remanded the matter to the trial court in order to determine whether the defendant lender had in fact complied with Section 2923.5. *Id*. at 235-36 ("Somebody's not telling the truth . . . . This case will obviously have to be remanded for an evidentiary hearing.").

Like the parties in *Mabry*, Plaintiff and Defendant have diametrically opposite versions of the facts. Plaintiff asserts that no contact was made and no due diligence performed. FAC ¶¶ 73, 76. Defendant maintains that, because the February 4, 2009, Notice of Default contains a declaration stating that Section 2923.5's requirements were met, this acts as conclusive proof that those requirements were in fact met and thus Plaintiff's claim must be denied.[5] Mot. at 6. This situation seems identical to that in *Mabry*. Like *Mabry*, the declaration at issue here is obviously form language that tracks the language of Section 2923.5.[6] RJN Ex. 3. Also like *Mabry*, the declaration here was not

---

[5]Defendant raises two other brief, meritless, and unsupported arguments: (1) that the claim is premature because a foreclosure sale of Plaintiff's home has not yet occurred; and (2) that Plaintiff cannot bring his Section 2923.5 claim because he has not made an offer of tender. Mot. at 5. Both of these arguments are flatly contradicted by the holdings in *Mabry*. *See Mabry*, 185 Cal. App. 4th at 225, 235 (holding that tender is not required before bringing a Section 2923.5 claim and that the sole remedy for a violation of that section is a foreclosure sale postponement, a remedy which would be unavailable were Plaintiff to bring his Section 2923.5 claim after the sale had occurred). These arguments thus fail.

[6]The finding that the Section 2923.5 declaration included in the February 4, 2009, Notice of Default is form language is strongly supported by the fact that that same language is contained in all three judicially noticed Notices of Trustee's Sale. *See* RJN Exs. 4-6. Section 2923.5 does not require that a Notice of Trustee's Sale include a Section 2923.5 declaration, making the declaration's presence in those three Notices of Trustee's Sale puzzling. The presence of the declaration there supports the inference that this was indeed form language routinely included in documents prepared by California Reconveyance Company, and that the due diligence required by Section 2923.5 may not have occurred in this case.

signed under penalty of perjury. *Id.* And finally, as noted above, Plaintiff and Defendant have very different factual stories regarding Defendant's compliance – or lack thereof – with Section 2923.5. On a motion to dismiss, this Court accepts as true Plaintiff's well-pled allegations and construes all inferences in the light most favorable to Plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.). Accordingly, as in *Mabry*, this Court believes an evidentiary hearing on Defendant's compliance with Section 2923.5 is warranted given the factual dispute regarding that compliance. Defendant's Motion to Dismiss Plaintiff's Section 2923.5 claim is hereby DENIED.

### D.     BREACH OF CONTRACT

In California, a "cause of action for breach of contract requires [1] pleading of a contract, [2] plaintiff's performance or excuse for failure to perform, [3] defendant's breach and [4] damage to plaintiff resulting therefrom." *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006). To satisfy the first element – the existence of a contract – a plaintiff must show offer, acceptance, and consideration. *See Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 474-75 (2012). In satisfying that first element, a party may plead a written contract "either by its terms – set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference – or by its legal effect." *McKell*, 142 Cal. App. 4th at 1489. In order to plead a contract's legal effect, a party must "allege the substance of its relevant terms." *Id.* This "legal effect" approach "is more difficult, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions." *Id.* Where a plaintiff chooses to plead the legal effect of a contract rather than attach the contract or recite it verbatim, dismissal of a breach of contract claim is inappropriate when a plaintiff's interpretation of the contractual terms is sufficiently detailed, and that interpretation is not rebutted by the defendant's attachment of the disputed contract. *See Constr. Protective Services, Inc. v. TIG Specialty Ins. Co.*, 29 Cal. 4th 189, 199 (2002) (upholding a reversal of demurrer where neither party in a breach of contract dispute submitted a copy of the contract but the plaintiff alleged the legal effect of that contract's terms and the defendant's breach thereunder).

In the present case, Defendant claims that the Special Forbearance Agreement ("SFA") cannot form the basis of Plaintiff's breach of contract claim "because it is not a valid, enforceable contract executed by both parties to the contract." Mot. at 8. The Court is unpersuaded by this argument. Defendant offers no support or reasoning as to *why* the SFA is not a valid, enforceable contract; instead, the Court is left with Defendant's conclusory legal statement and Plaintiff's well-pled complaint.

Plaintiff has adequately pled the legal effect of a valid and enforceable contract (the SFA), thereby satisfying the first element of a breach of contract claim. Plaintiff has pled offer: Defendant "sent to Plaintiff a document titled 'SPECIAL FORBEARANCE AGREEMENT." FAC ¶ 86. Plaintiff has pled acceptance: "Plaintiff signed and returned Defendants' [sic] SPECIAL FORBEARANCE AGREEMENT." FAC ¶ 88. Plaintiff has pled valid consideration: in exchange for Plaintiff's payments under the SFA, Defendant would reevaluate his request for a loan modification; Plaintiff then "made all payments on the terms set forth" by Defendant. FAC ¶¶ 87-88. Thus, Plaintiff

has adequately pled the existence of a contract.

Plaintiff has also pled the remaining elements of a breach of contract claim with respect to the SFA. Plaintiff has pled performance on his part: Plaintiff "made all payments on the terms set forth by Defendants [sic]." FAC ¶ 88. Plaintiff has pled breach by Defendant: Plaintiff claims that Defendant breached the SFA by failing to evaluate him for a loan modification. FAC ¶ 96. Plaintiff has pled resulting damages: Defendant's actions have caused Plaintiff to incur substantial late fees and penalties. FAC ¶¶ 102, 125, 175. Therefore, Plaintiff has adequately pled a breach of contract claim with respect to the SFA.

Plaintiff has also adequately pled a breach of contract claim with respect to the February 2010 Letter. Plaintiff has pled the existence of a contract – the February 2010 Letter – which adjusted his mortgage payments downward. FAC ¶ 89. Plaintiff has pled his performance under that contract. FAC ¶ 91. Plaintiff has pled that Defendant breached this agreement by refusing to accept payments beginning on June 28, 2010. FAC ¶¶ 92, 95, 97. Plaintiff has pled damages as a result of this breach. FAC ¶¶ 102, 125, 175. Therefore, Plaintiff has adequately pled a breach of contract claim with respect to the February 2010 Letter. Like the situation in *Construction Protective Services*, "whether [Plaintiff's] interpretation of the applicable contractual language is correct . . . remains to be seen, but the allegations are sufficient to establish a prima facie right to relief." *Constr. Protective Services*, 29 Cal. 4th at 199. Both parties are strongly encouraged to attach copies of the SFA and the February 2010 Letter in their next round of pleadings. As for now, Plaintiff has sufficiently pled the legal effect of both the SFA and the February 2010 Letter and Defendant's breaches thereunder. Defendant's bold assertion that no contracts existed is unpersuasive and is especially incredible with respect to the SFA – a document with the word "Agreement" in the title. As such, Defendant's Motion to Dismiss Plaintiff's breach of contract claims is DENIED.

### E. VIOLATION OF RESPA

Plaintiff claims that Defendant violated RESPA by failing to fully respond to a qualified written response ("QWR") he sent Defendant on March 15, 2011. FAC ¶ 105. RESPA allows borrowers who believe their "account is in error" to send their loan servicer a QWR requesting information relating to the servicing of their mortgage. *See* 12 U.S.C. § 2605(e). Failure to respond to a QWR subjects loan servicers to liability for an individual borrower's actual damages. *See* 12 U.S.C. § 2605(f).

Plaintiff's RESPA claim fails because he has not pled it with the requisite specificity. Plaintiff alleges that the QWR response he received from Defendant on April 7, 2011, was deficient because it did not include "proper validation of documentation, Plaintiff's loan application and all TILA disclosures." FAC ¶ 105. He also vaguely alleges that, in addition to not providing these documents, the QWR response was deficient because it "failed to provide Plaintiff with almost all of the information requested." FAC ¶ 107. Nowhere in the FAC does Plaintiff detail what he actually requested in his QWR, and neither the QWR nor Defendant's response are attached to the FAC.

Further, Plaintiff does not detail how the documents he does list – "proper validation of documentation, Plaintiff's loan application and all TILA disclosures" – were related to the servicing of his loan. RESPA obligates lenders to respond to QWRs which request "information relating to the *servicing*" of a borrower's loan.  12 U.S.C. § 2605(e) (emphasis added).  Plaintiff's loan application and TILA disclosures would seem to relate to the *origination* of his loan, not the servicing, and it is entirely unclear what Plaintiff means by "proper validation of documentation" with respect to loan servicing. Plaintiff thus fails to fully detail both what his QWR actually requested, how that request related to the servicing of his loan, and how Defendant's response was statutorily deficient.  Plaintiff's RESPA claim is hereby DISMISSED WITHOUT PREJUDICE.[7]

### F.    BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiff avers that Defendant breached the implied covenant of good fath and fair dealing (hereinafter the "implied covenant") in two different ways.  First, Plaintiff claims Defendant breached the implied covenant by failing to evaluate him for a loan modification, as was required by the SFA. FAC ¶ 121.  Second, Plaintiff claims Defendant breached the implied covenant when, on June 28, 2010, Defendant began refusing to accept payments under the terms of the February 2010 Letter "despite Defendants' [sic] previous notifications to Plaintiff that they would accept such a Loan payment."  FAC ¶ 124.

In order to plead breach of the implied covenant, "a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1021-22 (N.D. Cal. 2009). Breach of an express provision of the contract is not required as a prerequisite to claiming a breach of the implied covenant. *See Schwartz v. State Farm Fire & Cas. Co.*, 88 Cal. App. 4th 1329, 1339 (2001) (citing *Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.*, 2 Cal. 4th 342, 373 (1992)). Because the implied covenant exists to ensure compliance with the terms of a contract, it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349-50 (2000).

Defendant seeks to dismiss this breach of the implied covenant claim on several grounds. First, Defendant claims that Plaintiff fails to allege his own performance under the SFA or February 2010 Letter.  Mot. at 8.  This argument is unavailing.  As discussed above, Plaintiff clearly alleges that he complied with his obligations under both the SFA and the February 2010 Letter.  FAC ¶¶ 88, 91.

---

[7]Defendant argues that Plaintiff's RESPA claim is time-barred, as claims alleging an insufficient QWR response are subject to a three-year statute of limitations. *See* 12 U.S.C. § 2614.  However, this statute of limitations argument is unavailing.  Plaintiff received the allegedly deficient QWR response on April 7, 2011, well within the three-year statute of limitations.

This argument thus fails.

Defendant also claims that Plaintiff has failed to show the existence of a valid contract. Mot. at 8. As discussed above, Plaintiff has adequately pled the existence of a valid contract with respect to both the SFA and the February 2010 Letter. This argument thus fails.

Defendant also seeks to dismiss Plaintiff's breach of the implied covenant claim by asserting that defendant has in fact offered Plaintiff a permanent loan modification. Mot. at 9. Defendant does not provide the details of the purported offer, and Plaintiff hotly contests the applicability of that offer to the current claim. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss (Dkt. 16) at 10. Defendant's argument that this claim should be dismissed because Defendant offered a permanent loan modification amounts to an affirmative defense. "[A]ffirmative defenses, even though not appearing on the face of the complaint, may be established upon motion to dismiss . . . when, by affidavits, depositions and admissions, a set of undisputed facts is revealed upon which the moving party is entitled to judgment as a matter of law." *Suckow Borax Mines Consol. v. Borax Consol.*, 185 F.2d 196, 205 (9th Cir. 1950). Defendant provides no documentation establishing an undisputed set of facts with respect to this purported offer of a permanent loan modification; the Court only has Defendant's statement that such an offer both occurred and acts to conclusively defeat this claim. Without a record establishing the undisputed facts, dismissing Plaintiff's breach of the implied covenant claim because Defendant supposedly offered a permanent loan modification is presently unwarranted. Defendant remains free to raise this affirmative defense in a motion for summary judgment once the factual record has been clearly established.

Finally, Defendant seeks to dismiss this claim on the grounds that Plaintiff has not shown conduct that frustrated Plaintiff's right to enjoy the benefits of the SFA or February 2010 Letter, thereby failing to satisfy the second element of a breach of the implied covenant claim. Mot. at 9. This argument fails. Per Plaintiff's allegations, the SFA obligated Defendant to reevaluate Plaintiff for a permanent loan modification and Defendant failed to do so. FAC ¶ 96. This frustrated Plaintiff's ability to receive the benefit of his bargain because such a reevaluation was one of the benefits of the SFA. This Court has previously held that such conduct may violate the implied covenant. *See Arroyo v. Aurora Bank, FSB*, No. EDCV 11-2063 DOC (JEMx), 2012 WL 628205, at *10 (C.D. Cal. Feb. 24, 2012) (finding that a failure to evaluate a borrower for a loan modification may violate the implied covenant when the contract containing that implied covenant expressly contemplated considering the borrower for a loan modification). Also, per Plaintiff's allegations, Defendant stopped accepting payments under the February 2010 Letter on June 28, 2010. FAC ¶ 95. This conduct frustrated Plaintiff's right to enjoy the benefit of his bargain because Defendant's refusal of Plaintiff's payments forced Plaintiff's home back into foreclosure, the very result the February 2010 Letter was intended to avoid. Thus, Defendant's argument that Plaintiff has not shown conduct frustrating his right to receive the benefit of his bargains fails.

Plaintiff has adequately pled a breach of the implied covenant claim. *See Fortaleza*, 642 F. Supp. 2d at 1021-22 (requiring averment of a contract and conduct by one party that frustrates

another's right to receive the benefit of his or her bargain in order to plead breach of the implied covenant). As discussed above, Plaintiff has competently alleged the existence of both the SFA and the February 2010 Letter. Also, as discussed above, Plaintiff has detailed conduct by Defendant that frustrated his right to enjoy the benefits of both the SFA and the February 2010 Letter. Accordingly, Defendant's Motion to Dismiss Plaintiff's breach of the implied covenant claim is DENIED.

### G. UNFAIR AND DECEPTIVE BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200

Plaintiff avers that Defendant has engaged in unfair and deceptive business practices in violation of California's Unfair Competition Law (hereinafter "UCL"), codified in California Business & Professions Code Section 17200. Plaintiff claims that Defendant has violated the UCL in a number of ways, both during the origination and the servicing of his loans. As discussed above, to the extent that Plaintiff bases his UCL claim on actions taken by WaMu during the origination of his loans, such claims are not properly brought against Defendant. With respect to the actions taken by Defendant during the servicing of his loans, Plaintiff advances a number of theories as to how Defendant violated the UCL; most notably, he claims that Defendant violated the UCL by failing to conduct the due diligence required by Section 2923.5. FAC ¶ 171.

Defendant seeks to dismiss Plaintiff's UCL claim on two separate grounds. First, Defendant argues that Plaintiff has not suffered damages as a result of any unfair competition and thus cannot pursue such a claim. Mot. at 13; *see also* Cal. Bus. & Prof. Code § 17204 (requiring injury in fact and the loss of money or property to pursue a UCL claim). Second, Defendant argues that Plaintiff has alleged insufficient facts to show a UCL violation. Mot. at 14. Neither argument is persuasive.

The California Supreme Court has described the UCL's coverage as "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cal-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citations omitted). In order to bring a UCL claim, a plaintiff must have "suffered injury in fact" and "lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

Plaintiff has adequately pled that he suffered pecuniary damages as a result of Defendant's unfair business practices. Plaintiff clearly alleges that he has suffered increased interest and late fees as a result of Defendant's refusal to accept his mortgage payments and Defendant's leading him to believe he had been offered a permanent loan modification. FAC ¶¶ 125, 175. Plaintiff thus satisfies the requirements of California Business & Professions Code Section 17204.

The UCL defines "unfair competition" as "any unlawful, unfair, or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. Because the UCL is written in the disjunctive, "a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Id.* Thus, each of the three 'prongs' of the UCL – unlawful, unfair, and fraudulent – captures a separate and

distinct theory of liability. *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010). Under the 'unlawful' prong, a practice violates the UCL if it also violates another state or federal law; the UCL thus 'borrows' violations of other laws as predicates and treats them as independently actionable. *Cal-Tech Commc'ns*, 20 Cal. 4th at 180.

Plaintiff has alleged facts sufficient to show that Defendant violated the UCL, specifically its 'unlawful' prong, by failing to conduct the due diligence required by Section 2923.5. Defendant's argument that Plaintiff has not alleged sufficient facts seems predicated on the notion that this Court would find Plaintiff's other claims unsubstantiated. This is not the case. As noted above, Plaintiff has adequately pled a violation of Section 2923.5. As such, this alleged violation may serve as the predicate violation for the 'unlawful' prong of the UCL, and Plaintiff has properly pled a UCL violation. Defendant's Motion to Dismiss Plaintiff's UCL claim based on actions taken by Defendant during the servicing of his loan is hereby DENIED.

### H.   PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff asserts a "cause of action" for "preliminary and permanent injunction." As Defendant correctly points out, injunctions are a remedy, not a cause of action. *See*, *e.g.*, *Marlin v. Aimco Venezia, LLC*, 154 Cal. App. 4th 154, 162 (2007) ("A 'cause of action' must be distinguished from the remedy sought . . . . [T]he relief is not to be confounded with the cause of action, one not being determinative of the other. An injunction is a remedy, not a cause of action." (citations omitted)); *Roberts v. Los Angeles Cnty. Bar Ass'n*, 105 Cal. App. 4th 604, 618 (2003); *Ayala v. Bank of America*, No. 09CV1946, 2010 WL 1568577, at *4 (S.D. Cal. Apr. 16, 2010). This Court notes that it is not ruling on whether Plaintiff is entitled to either a preliminary or permanent injunction, only that those requests for relief are not properly asserted as a "cause of action." Therefore, Plaintiff's "cause of action" for "preliminary and permanent injunction" is DISMISSED WITH PREJUDICE.

### IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss. Plaintiff's causes of action for fraud in the origination of loan, violation of Section 2932.5, violation of TILA, rescission, predatory lending in violation of the UCL, violation of the UCL with respect to WaMu's lending practices, violation of Section 1632(b), and preliminary and permanent injunction are DISMISSED WITH PREJUDICE.

Plaintiff's cause of action for violation of RESPA is DISMISSED WITHOUT PREJUDICE.

As to Plaintiff's causes of action for violation of Section 2923.5, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the UCL with respect to Defendant's servicing of his loan, Defendant's Motion to Dismiss is DENIED.

Plaintiff shall submit an amended complaint no later than April 9, 2012.

The Clerk shall serve this minute order on all parties to the action.